[No. 17634. *En Banc.* February 14, 1923.]

RECORD PUBLISHING COMPANY, *Appellant,* v. WALTER A. MONSON, *Respondent.*[1]

CONSTITUTIONAL LAW (24)—STATUTES—VALIDITY—PRESUMPTIONS. It being the duty of the courts to construe legislation so as to render it valid and constitutional, and to declare it invalid only where there can be no reasonable doubt, Rem. Comp. Stat., § 253-4, requiring a publisher to charge a minimum fee for legal notices, will be construed to mean that it shall be lawful to do so, in the absence of any express contract (MACKINTOSH, FULLERTON, PARKER, and PEMBERTON, JJ., dissenting).

CONSTITUTIONAL LAW (125)—NEWSPAPERS (1)—DUE PROCESS—DEPRIVATION OF LIBERTY TO CONTRACT—MINIMUM CHARGES FOR SERVICES. Rem. Comp. Stat., §§ 253-1 to 253-7, relating to official newspapers, and providing a minimum fee for the publication of legal notices, the main purpose of which was to correct abuses and to require the affidavit to state the full amount of the fee and its payment in full, when construed to mean that it shall be lawful to charge the statutory fee in the absence of any express contract, is not an unlawful restraint on the right of freedom of contract, or a violation of the due process clause. (MACKINTOSH, FULLERTON, PARKER, and PEMBERTON, JJ., dissenting).

CONSTITUTIONAL LAW (117)—EQUAL PROTECTION OF THE LAW—DISCRIMINATION AS TO CHARGES—NEWSPAPERS. Rem. Comp. Stat., § 253-4, allowing newspapers having a circulation of over 20,000 to charge such rates as may be necessary in addition to the statutory rate for legal notices, is not unconstitutional as creating a discrimination in their favor.

SAME (117)—EQUAL PROTECTION OF LAWS—DISCRIMINATION AS TO CHARGES—MUNICIPALITIES. Rem. Comp. Stat., § 253-4, providing a

[1]Reported in 213 Pac. 13.

minimum rate for publishing legal notices is not unconstitutional or an unlawful discrimination in that it excepts notices published by municipal or quasi-municipal corporations and the United States Government.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered September 6, 1922, in favor of the defendant, upon overruling a demurrer to the affirmative defense, in an action on contract, tried to the court. Affirmed.

*Roberts & Skeel* and *J. J. Geary,* for appellant.

*Preston, Thorgrimson & Turner,* Seattle Bar Association, *amici curiae.*

HOLCOMB, J.—Appellant brought suit to recover $5.43 for the publication of a legal notice at the rate of $1.40 per hundred words for the first insertion and 80 cents per one hundred words for each subsequent insertion, these being the rates provided for by ch. 99, Laws of 1921, p. 294, § 4 (Rem. Comp. Stat., §§ 253-1 to 253-7).

The suit was a friendly one, brought, as stated in the briefs, on behalf of the Washington State Press Association, seeking to uphold the law.

The answer of respondent admits the publication, but alleges by way of affirmative defense an express agreement that the total charge was to be $3.75, and tendered that amount. Appellant demurred to the affirmative defense, urging that the agreement was void as contrary to §§ 4 and 7, ch. 99, Laws of 1921, pp. 294, 295 (Rem. Comp. Stat., §§ 253-4, 253-7). The trial court overruled the demurrer, holding the provisions of ch. 99, *supra,* to be unconstitutional and void.

The question before us is the constitutionality of these sections of the chapter involved.

Section 4 of ch. 99 provides.:

"In all cases where publication of legal notices of any kind is required or allowed by law, the person or officer desiring such publication shall be required to pay on the basis of one dollar and forty cents per folio of one hundred words for the first insertion and eighty cents per folio of one hundred words for each subsequent insertion, or its equivalent in number of words: Provided, That any newspaper having a circulation of over 20,000 copies each issue may charge such additional rate as it may deem necessary and just and any person or officer authorizing the publication of any legal notice in such newspaper may legally pay such rate as is charged by such newspaper, and: *Provided, Further,* That this section shall not apply to the amount to be charged for the publication of any legal notice or advertisement for any school district, village, town, city, county, state, municipal or quasi-municipal corporation or the United States Government."

Section 7 provides:

"The affidavit of publication of all notices required by law to be published shall state the full amount of the fee charged for such publication and that the fee has been paid in full."

Two objections are made to the law:

(1)   That it imposes an unlawful restraint on the right of freedom of contract, thus violating the due process clause of the constitution; and

(2)   That it discriminates unjustly in favor of newspapers having a circulation of over twenty thousand copies each issue, and also in favor of municipal corporations named in the proviso, thus violating the special privilege clause of the constitution.

We have no brief on the part of respondent himself, but are favored by a very able brief on behalf of the Seattle Bar Association, by *amici curiae.*

*Amici curiae* do not dispute that the legislature has power to determine as to what costs of publication may be taxed. But they argue that this statute goes much farther. They urge that it attempts to provide that a litigant shall be compelled by law to pay certain fixed charges to newspapers, when those newspapers are willing to perform the services for less, or even perform them without charge. It therefore, they say, attempts to destroy, as to this matter, the freedom of the proprietor of the newspaper to make such contract as he sees fit in doing his private business, and to destroy also the freedom of the litigant as to the right of contract in the same manner. They insist that the newspaper proprietor cannot be compelled to publish such notices and that the statute does not attempt to compel him to accept the amount fixed by statute, and that the only way the statute affects the newspaper owner is that it compels him to make a certain minimum charge, whether he will or no.

It is the duty of the courts, and this court has generally been disposed to so construe legislation, to render it valid and constitutional rather than otherwise, when possible.

We will presume that, in order to bring the legislation within the power of the legislature under constitutional restrictions, a state of facts can generally be reasonably presumed to exist which justifies the legislation, and it is only in cases where there can be no reasonable doubt that the act of the legislature violates some constitutional prohibition or limitation that we will set such act aside. *State v. Pitney,* 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A 209; *State v. McFarland,* 60 Wash. 98, 110 Pac. 792, 140 Am. St. 909; *State ex rel. Vance v. Frater,* 84 Wash. 466, 147 Pac. 25; *State ex rel. Case v. Howell,* 85 Wash. 281, 147 Pac. 1162; same

parties 85 Wash. 294, 147 Pac. 1159, Ann. Cas. 1916A
1231; *Allen v. Bellingham,* 95 Wash. 12, 163 Pac. 18;
*State ex rel. Reclamation Board v. Clausen,* 110 Wash.
525, 188 Pac. 538, and *Parrott & Co. v. Benson,* 114
Wash. 117, 194 Pac. 986.

In the last case cited we said:

"We are already committed to the doctrine that the
police power includes within its scope not only the pub-
lic health, public morals, and public safety, but also all
regulations designed to promote public convenience, the
general welfare, and general prosperity and all great
public needs."

Under our system of judicial procedure, many no-
tices are required to be published, and litigants cannot
proceed in courts in various proceedings without the
publication of notices. Estates cannot be administered,
mortgages foreclosed and property sold, nor real prop-
erty subjected to execution without the use of notices
published in newspapers. In so far as the newspapers
publish these notices, they are performing a public
service and assisting in the administration of justice.
Their service is as essential as the service of the pro-
cess server, or any other adjunct of the court.

The legislature has the undoubted power to make
reasonable regulations governing court procedure, and
governing the fees to be charged for various judicial or
public services. We can readily conceive that, in the
interest of regularity and uniformity, and probably
economy, the legislature found abuses which this act
tends to remove. We can readily conceive one, and
that is that formerly litigants may have padded their
cost bills as to the items of fees charged for publishing
notices. Under this statute, and especially § 7, re-
ferred to, this can no longer be done. Nor can it be
contemplated that they can or will refuse arbitrarily

to publish legal notices if tendered the legal fees. It was probably for the purpose of creating a standard of legal fees which litigants could possibly compel newspapers to accept, and which would not be so unreasonably low as to be unjust or illegal, that such act as the one in question was enacted.

But we do not assent to the assertion that a service which cannot be demanded and compelled cannot be regulated. That contention has no basis in principle. *Noble State Bank v. Haskell,* 219 U. S. 104.

While the language of the statute is that, ". . . . the person or officer desiring such publication shall be required to pay on a basis . . ." etc., it amounts to no more than if the statute had said: "It shall be lawful for the publisher to charge." With that construction it amounts to no more than saying that, in the absence of an express contract providing for publication at a different rate than that fixed by statute, the publisher can charge the rates fixed by statute and enforce payment, and in the absence of an express contract for a different rate, a person or officer desiring such publication shall be required to pay on the basis fixed by the statute. In other words, in the absence of an express contract, the contract implied by law exists to pay the rate provided by statute.

A consideration of the public health, safety, morals, or general welfare, does not authorize the legislature, under the guise of exercising the police power, to deprive parties of the right to voluntarily contract concerning such ordinary and everyday affairs of life as the printing of legal or public notices. Such publications have to do generally with estates, with sales of property under execution, or with suits concerning or involving property, and are, therefore, largely concerning property rights. Legislation respecting the

same, wholly supplanting the right of private contract relating thereto, would no doubt be unconstitutional, if that were its purpose and effect. *Dennis v. Moses,* 18 Wash. 537, 52 Pac. 333, 40 L. R. A. 302; *Bradley Engineering & Machine Co. v. Muzzy,* 54 Wash. 227, 103 Pac. 37, 18 Ann. Cas. 1072. Such was not the purpose of this act.

The idea dominant in the legislative mind is shown by the provisions of § 7 requiring the affidavit of publication of all notices required to be published to state the full amount of the fee charged for the publication and that the fee has been paid in full. If there was only one rate to be charged and that the rate fixed by statute, the affidavit would not need to say anything except that the fee had been paid in full to enable the publication fee to be taxed as costs. This construction does not place any limitation upon the freedom of contract, which is in the interest of the public, the litigant, and all others having legal notices to publish.

The act is also attacked, however, on the ground that the proviso that any newspaper having a circulation of over 20,000 copies each issue may charge such additional rates as it may deem necessary and just is void as creating discrimination in favor of newspapers having a circulation of 20,000 copies or over each issue.

It is a well known fact that legal notices are commonly published in the smaller daily and weekly newspapers in each locality, and also that only a few large daily newspapers in the principal cities of the state have circulations of over 20,000 copies each issue, and they have large circulations outside their immediate localities. Such papers have regular advertising rates which are ordinarily much higher than litigants care to pay for legal notices which require only local publication. There may be occasions, however, when it may

be extremely desirable that legal notices be published in a newspaper having as wide circulation outside of the immediate locality in which it is published as possible. Such notices, for instance, as notices for bids for furnishing supplies to the state and to the Federal government, or even for municipalities, or notices calling for bids on contracts upon public works; and it would be only just that such newspapers, with such wide circulation outside of their immediate localities, should have an additional rate according to their wide circulation, and usually persons requiring such wide publicity of their notices are amply able to pay the costs thereof. In any event, if it should happen to be a court proceeding in which the notice was published in such newspaper having a circulation of over 20,000 copies, the court would be empowered, upon a re-taxation of costs, to prevent any but a reasonable and necessary amount to be taxed as a disbursement.

So far as the exception as to legal notices for any school district, village, town, city, county, municipal or quasi municipal corporation, or the United States Government are concerned, there is no doubt that the government, including the state, when legislating upon such matters, can generally except itself and its legal subdivisions from the provisions of statutes intended to govern the public generally.

We conclude, therefore, that the act involved is in all respects constitutional and valid, and also that the affirmative defense alleged by respondent, that an express agreement existed between him and appellant that the total charge was to be $3.75, and that he had tendered that amount, was a valid defense under this statute.

Affirmed.

MAIN, C. J., BRIDGES, TOLMAN, and MITCHELL, JJ., concur.

MACKINTOSH, J. (dissenting)—I cannot give my assent to the conclusion reached in the main opinion that the act under consideration is constitutional only to the extent of establishing a rate for the publication of legal notices in the absence of an express contract with the publisher. If the act is constitutional to that extent, it is constitutional to the full extent of its plain intent and language. If the legislature has the power to say to the publisher of a newspaper that a certain rate is reasonable, in the absence of an express agreement as to the amount to be charged, and the publisher must accept that rate whether, as a matter of fact, it is reasonable or not, it is illogical to hold that the rate provided by the statute is not a fixed rate which must be charged, even where there may have been an express contract for a different rate.

It appears to me that the act is valid as establishing a fixed rate which a publisher by private agreement cannot change, or else the act is unconstitutional for the reason argued by the respondent, that is, as an unlawful interference with the right of private property.

I have no hesitancy in declaring the act constitutional, for, as pointed out in the main opinion, it is our duty to uphold legislative acts passed in the exercise of the sovereign police power.

"If a state of facts can reasonably be presumed to exist which would justify the legislation, the court must presume that it did exist and that the law was passed for that reason." *State v. Pitney,* 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A 209.

The discharge of many judicial functions of government requires the proper publication of process, etc., and it is reasonable to presume that, before the passage of this act, such a situation existed as interfered

19—123 WASH.

with such proper publication; it is common knowledge that the small newspapers generally are not very profitably operated; that the publishers thereof are more generally recompensed by a sense of performance of one of the highest of public services than by any monetary reward, and that the cut-rate competition for legal advertising results in rates not at all compensatory, with the ultimate result of making publication of the papers less productive and therefore curtailing circulation, and with decreased circulation comes less chance of the legal notices reaching the attention of those for whom they were intended. The legislature may well have recognized this situation, and to meet it passed this act, and I see no reason why it should not be sustained as it is written.

Upon the question of whether there is a discrimination in favor of newspapers having a circulation of over 20,000 which renders the act invalid, I accept the reasoning of the main opinion, which seems to me correctly states the law upon this question. I dissent from the main opinion on the ground that I believe the act in its entirety to be constitutional and that the court should have so construed it.

FULLERTON, PARKER, and PEMBERTON, JJ., concur with MACKINTOSH, J.