[No. 27428.   *En Banc.*   June 29, 1939.]

THE STATE OF WASHINGTON, *on the Relation of The Department of Finance, Budget and Business, Appellant,* v. THURSTON COUNTY, *Respondent.*[1]

[1]Reported in 92 P. (2d) 234.

*The Attorney General* and *W. A. Toner, Assistant,* for appellant.

*Smith Troy, E. A. Philbrick,* and *John S. Lynch, Jr.,* for respondent.

JEFFERS, J.—This action was instituted by the state of Washington to recover from Thurston county the sum of $34,096.18, together with interest, for the care and maintenance of insane patients committed from Thurston county to the western state hospital for the insane, from January 1, 1934, to September 30, 1937.

The complaint, in so far as material to the questions raised herein, alleges that all of the persons committed

to the western hospital during the period above mentioned have been adjudged by the superintendent of the hospital to be non-violently insane, and that each of said persons remained non-violently insane for the period hereinbefore mentioned. It is further alleged that none of the persons so committed, or his estate, or his relatives, have paid anything for the maintenance of such person while so confined, except as shown by the bill of particulars attached to the complaint.

The bill of particulars sets out the names of the persons committed for whom a charge of $4.50 a week was made, and also all payments made. After deducting all credits, the bill of particulars shows a balance due for such maintenance of $34,096.18, the amount claimed by the state herein.

The county, by its answer, denied generally its liability and alleged affirmatively that, in each instance where a patient was committed from Thurston county, a hearing was had in the superior court, upon a complaint filed therein; that witnesses were sworn, and in each instance at least two medical experts were sworn, and examined such patient, in the presence of the court and counsel for the state; that such medical experts swore to their findings and conclusions; and that at the conclusion of all the evidence, the court in each and every case found such person to be violently insane and dangerous to life and property.

It is further alleged that Rem. Rev. Stat., § 6930 [P. C. § 2827], in so far as it undertakes to authorize the superintendent of the hospital to set aside, revise, or in any manner alter or affect the judgment of the superior court theretofore made in each of such cases, is unconstitutional and void, as an attempt by the legislature to confer judicial powers on an administrative officer and as an attempt to confer upon such administrative

officer power to revise, set aside, and alter a judgment of the superior court.

The reply put in issue the affirmative matter set up in the answer.

The cause was submitted to the court upon an agreed statement of facts, and after a consideration thereof, the court entered judgment in favor of plaintiff in the sum of $6,482.92 and interest, this being the amount the court found due for patients in regard to whom the trial court did not make a finding that they were dangerous to be at large. The state has appealed.

Appellant contends the trial court erred in not allowing recovery for the remainder of the persons mentioned in the complaint and the agreed statement of facts, or, in other words, in refusing to allow recovery for all of those patients whom the superintendent, upon examination, had determined to be not violently insane and dangerous to be at large. Appellant also claims the court erred in deciding that the superintendent was without authority to make a finding as to whether or not the patient was violently insane and dangerous to life and property.

The following are the material facts contained in the agreed statement of facts: From January 1, 1934, to September 30, 1937, the appellant maintained, cared for, and treated, in the western state hospital, approximately one hundred persons committed to this institution from Thurston county, a definite statement of such care and maintenance being set forth in the bill of particulars, to which reference has been made, and which shows the sum of $34,096.18 as remaining unpaid for such care and maintenance. None of the persons, or his estate, or his relatives, have paid anything for the care of such person, except as credited in the statement, nor have any of such persons been found financially able to pay, except as shown in the statement.

All of the persons were committed to the western state hospital by the superior court of Thurston county, and each person so committed has been found by the superintendent of the hospital to be not violently insane and dangerous to life and property. The county commissioners of Thurston county have been notified of the result of such examination.

The superior court of Thurston county, in each case mentioned, made a commitment, and also made findings of fact with respect to the financial ability of the patient and his relatives to pay the costs and expenses, costs of transportation, and court costs. Upon the hearings, legally qualified physicians examined the persons so adjudged to be insane, as to the character of their insanity, for use in the physician's certificate attached to the official commitment by the court. The order of commitment was made upon a form provided by the state, a copy of such form being made a part of the statement. None of the cases is of imbecility, harmless chronic mental disorder, or mania *a potu*.

The form of the commitment used by the court in each case, in so far as material, was as follows:

"................................................, the person named in the foregoing affidavit, being this day brought before me, for examination on a charge of insanity, and no jury having been demanded either by or on behalf of said person, and having heard the testimony of ................................... witnesses who have been acquainted with the accused during the time of the alleged insanity; and Drs. ................................ and ................................, legally qualified and reputable physicians, after hearing the testimony of witnesses, and after a personal examination of the accused, having made the certificate by law required; and being myself satisfied that the said ................................... is insane, and being further satisfied of the truth of all the matters set forth in the certificates of said physicians, I do hereby order that the said ...................................

be confined in the ...................................................Hospital for Insane."

In the form of commitment used in each case, the following questions were submitted to the examining physicians, and answered by them:

"(26) Are there suicidal, homicidal or incendiary tendencies?"

"(27) If suicidal, is the propensity now active and in what way?"

"(28) Is there a disposition to injure others? If so, is it from sudden passion or premeditation?"

"(61) With what form of insanity is the patient afflicted?"

"(67) Do you consider the patient dangerous to be at large?"

"(69) Briefly state the reasons why you consider this patient insane."

Respondent contends that Rem. Rev. Stat., § 6930, is unconstitutional and void, as in contravention of Art. IV, § 1, of the state constitution, which vests in the courts the judicial power of the state, in so far as this section attempts to delegate to the superintendent the authority to determine whether or not a patient, after his admission to the hospital, is violently insane and dangerous to life and property. It is further contended by respondent that the section is in violation of Art. I, § 3, of the constitution, in that the effect of such determination by the superintendent amounts to the taking of county property without due process of law.

Prior to 1925, Rem. Comp. Stat., § 6930, vested in the court the power to determine whether or not a patient was violently insane and dangerous to life and property, for the purpose of determining whether the state or the county should bear the expense of maintaining such patient. This section, in *State v. Pierce County*, 132 Wash. 155, 231 Pac. 801, 46 A. L. R. 594, was held to be constitutional and valid in all respects. In 1925,

the legislature amended § 6930, *supra,* and delegated to the superintendent the right to determine whether or not a patient, after his commitment, was violently insane and dangerous to life and property, such determination to be used as a basis for liability of either the state or county. Rem. Comp. Stat., § 6930, as amended, is now Rem. Rev. Stat., § 6930.

In passing upon the constitutionality of a legislative enactment, several things must always be kept in mind. Courts will not sit to review or revise legislative action, but rather to enforce the legislative will when acting within its constitutional limits. A legislative act carries with it the presumption of its constitutionality, and will not be declared void unless its invalidity appears beyond a reasonable doubt. If the act is fairly and reasonably open to more than one construction, that construction will be adopted which will harmonize the statute with the constitution and avoid a conflict therewith. *Smith v. Seattle,* 25 Wash. 300, 65 Pac. 612; *Litchman v. Shannon,* 90 Wash. 186, 155 Pac. 783; *Record Pub. Co. v. Monson,* 123 Wash. 569, 213 Pac. 13; *Robb v. Tacoma,* 175 Wash. 580, 28 P. (2d) 327, 91 A. L. R. 1010.

For the purpose of this opinion, we shall divide § 6930, *supra,* into two parts; the first dealing with the manner in which one alleged to be insane is brought before the court and subsequent procedure by the court; the second part with certain acts which the statute authorizes the superintendent to perform after the patient reaches the hospital.

This section provides for the filing, before the superior court, of a complaint containing the charge of insanity, after which the court is required to summon witnesses, among whom must be two reputable physicians. The lay witnesses shall testify to conversations, manner, and general conduct of the alleged insane per-

son, and the doctors, after hearing the witnesses, and after making a personal examination of the alleged insane person, shall certify under oath that the person examined is insane, and that the case is of recent or curable character, or that the insane person is of homicidal, suicidal, or incendiary disposition, or that from any other violent symptom, the insane person would be dangerous to his or her own life, or the lives and property of the community. *If the judge shall be satisfied that the facts revealed in the examination establish the existence of the insanity of the person accused,* the insane person shall be ordered by the judge to be sent to a hospital for the insane, upon the following conditions: It is provided that, as a part of such proceedings, the court shall determine whether or not the person so committed, or his estate, or relatives, have the financial ability to pay the costs and expenses of the care and maintenance of such insane person while at the hospital. It is further provided that the court shall make *findings of fact relative to the ability of such person, or his estate, or relatives, to pay,* and shall enter a judgment for the sum of $4.50 per week, costs of transportation and court costs, against the proper party or estate found responsible.

It will first be observed that nothing is said in this section, nor is any provision made, whereby the court, at the time of the commitment or at any other time, is authorized to make a finding or enter judgment that either the state or county is liable for the care and maintenance of such insane person. The only authority vested in the court relative to payment is to determine whether or not the person, his estate, or relatives, are financially responsible and able to pay such charges.

A careful analysis of this section convinces us that the only determination the court is authorized to make at the time of the commitment is whether or not the

person brought before it is insane, and that this is purely a judicial function; that at such time the court is also authorized to determine and make findings in regard to the ability of the person, his estate, or relatives, to pay for the maintenance of such patient. It is true the court necessarily does, in arriving at his conclusion as to whether or not the person is insane, pass upon the findings made by the doctors, but we think this is only for the purpose of determining the question of insanity, and we find nothing in the statute which would authorize the court, at the time of the commitment or thereafter, to make a determination as to whether or not the patient was violently insane, for the purpose of determining the liability of either the state or the county, nor does the court, in fact, make any finding which would affect such right.

We shall now consider the second part of § 6930, which, so far as applicable to the questions raised herein, provides that, when such patient is received at the hospital, he shall be forthwith examined by the superintendent, who shall determine whether or not such insane person is violently insane and dangerous to life and property, and shall thereupon notify the county commissioners of the county from which such person was committed, of the result of such examination. If the court has found that the insane person, his estate, or relatives, did not have the ability to pay, and the superintendent shall determine that such insane person is violently insane and dangerous to life and property, the charges and costs referred to shall be borne by the state. If, however, the court has found that the insane person, his estate, or relatives, did not have the ability to pay the charges and costs, and the superintendent shall determine that such insane person is not violently insane and dangerous to life and property, such charges

and costs shall be paid by the county from which the commitment was made.

We cannot agree with respondent that the superintendent, in making the determination authorized by the statute, is exercising a judicial function vested in the court, nor can we agree that by such action the superintendent is in any manner changing, modifying, or affecting the judgment of commitment. As we view the statute, it gives to the court the right to determine certain facts for the express purpose of determining whether or not the person is insane, and to determine whether or not the person or his relatives have the ability to pay, and the statute gives to the superintendent, after the commitment, the authority to determine certain facts for the express purpose of determining whether the state or county shall be liable. This, we believe the legislature had the right to do. It is our opinion that, after the person is committed, the care and maintenance of such person becomes an administrative problem, and that the legislature may delegate to an administrative officer the authority to determine who shall pay for such care and maintenance, as was done in the section under discussion.

We think the case of *State v. Pierce County,* *supra,* is decisive of the question raised by respondent, that this section violates the fourteenth amendment of the United States constitution and Art. I, § 3, of the state constitution. This same question was raised in the *Pierce County* case, *supra,* and we quote the third reason given in that case for holding the contention of respondent untenable:

"The third answer is that, even though the county may be said to have had no opportunity to adjudicate the question of its liability in the commitment proceedings, yet it has not been deprived of its property without due process of law, since, in an action begun to recover the charge against the county, it has full oppor-

tunity to raise all the issues and have a full adjudication of all questions it may seek to raise. This same point was raised in *State v. Bateman,* 110 Kan. 546, 204 Pac. 682, and *Guthrie County v. Conrad,* 133 Iowa 171, 110 N. W. 454, by relatives of the insane persons, who claimed that they had not had their day in court. But the courts there said that, in the suits brought to recover from them the amount of the charges, they had ample opportunity to present every objection, and that therefore their property was not being taken without due process of law."

While it is true that, in the *Pierce County* case, the court did not have before it the question of the delegation of power to an administrative officer to determine the liability of the state or county to pay, still we believe there is much in that case which supports the contention of appellant in the instant case.

We think the case of *State v. Mulcare,* 189 Wash. 625, 66 P. (2d) 360, is applicable in principle to the instant case, and is decisive of the question as to whether or not the legislature may vest the superintendent of the hospital with authority to make the determination authorized by the statute. It was contended in the cited case that the statute which delegated to the board of prison, terms, and paroles the right to fix the term of imprisonment was unconstitutional. It was argued that the fixing of a term of imprisonment is a judicial power which cannot be conferred upon, or executed by, an administrative body, such as the parole board. In the cited case, we stated:

"It is the function of the judicial branch of the government to determine the guilt of persons charged with crimes and to impose the sentence provided by law for the crime of which a particular individual has been found guilty. But the execution of the sentence and the application of the various provisions for the mitigation of punishment and the reformation of the offender are administrative in character and are properly exer-

cised by an administrative body, according to the manner prescribed by the legislature."

So, in the instant case, we believe the matter of determining whether or not a person is insane is purely a judicial function, but the question of determining the class of insanity for which the state or county will render assistance, is an administrative function, and properly delegated to an administrative officer.

In the case of *State ex rel. Boyle v. Ernst,* 195 Wash. 214, 78 P. (2d) 526, we recognized the right of the legislature to safeguard the expenditure of state funds, therein saying:

"With respect to the second contention—of necessity the legislature must delegate to executive and administrative officers the power to expend state funds. It may and does set up such safeguards and limitations as it may deem expedient—as in this instance, where it has prohibited expenditures except upon quarterly budgets approved by the director, and from allotments made by the governor. Should the court, in face of these statutory provisions, grant the writ sought, its decree would amount to nothing short of usurpation of legislative power and the assumption of executive and administrative functions."

See, also, *Hanson v. Soderberg,* 105 Wash. 255, 177 Pac. 827; *Vail v. Seaborg,* 120 Wash. 126, 207 Pac. 15.

We conclude, therefore, that the legislature had the right to vest in the superintendent the authority to determine whether or not a patient is violently insane and dangerous to be at large; that no constitutional right of respondent, for the particular purpose prescribed by the statute, has been violated; and that the trial court erred in refusing to give judgment in favor of appellant in those cases where the court had found the insane person, or his estate, or his relatives, unable to pay the costs and charges, and the superintendent of

the hospital had determined the patient was not violently insane and dangerous to life and property.

The cause is reversed and remanded, with instruction to the trial court to enter judgment for appellant in accordance with this opinion.

BLAKE, C. J., STEINERT, ROBINSON, and GERAGHTY, JJ., concur.

SIMPSON, J. (dissenting)—The majority, for the purpose of ascertaining the meaning of the statute in question, divides it into two parts: First, to ascertain the duty of the court and its powers; second, to show the authority of the superintendent of the hospital.

While it will readily be conceded that every presumption is to be indulged in favor of the constitutionality of a statute, and giving full effect thereto, I cannot subscribe to the construction placed upon the statute by the majority for the reason that, to my mind, Rem. Rev. Stat., § 6930 [P. C. § 2827], vests in the courts the power to determine the class and degree of insanity and, immediately after this judicial determination has been made, in the absence of any changed conditions, also vests the superintendent of the hospital for the insane with the power to determine the class and degree of insanity. Assuming, without deciding, that the legislature may reserve the question of the determination of the class and degree of insanity either for administrative or judicial determination, that power cannot be vested in both, to be exercised at one and the same time without any intervening changed conditions. In so far as the statute provides for the vesting in and exercise of this power almost simultaneously by two different branches of government, its provisions are incompatible, and hence the administrative authorities must defer to the judicial.

I am unable to agree that, in construing a statute, it

may be divided into two separate and distinct parts, and a separate meaning attached to each part by disassociating each part from the other. It is a fundamental rule of statutory construction that the whole act must be construed together, and each word, phrase, clause, and sentence considered with reference to the other words, phrases, clauses, and sentences appearing in the statute.

"The practical inquiry is usually what a particular provision, clause or word means. To answer it one must proceed as he would with any other composition —construe it with reference to the leading idea or purpose of the whole instrument. A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently each part or section should be construed in connection with every other part or section and so as to produce a harmonious whole. It is not proper to confine the attention to the one section to be construed. 'It is always an unsafe way of construing a statute or contract to divide it by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions.' " 2 Lewis' Sutherland, Statutory Construction (2d ed.), 706, § 368.

See, also, *Bradley Engineering & Mfg. Co. v. Heyburn,* 56 Wash. 628, 106 Pac. 170, 134 Am. St. 1127; *Rothweiler v. Winton Motor Car Co.,* 92 Wash. 215, 158 Pac. 737; *Salo v. Pacific Coast Casualty Co.,* 95 Wash. 109, 163 Pac. 384, L. R. A. 1917D, 613; *State v. Hilstad,* 148 Wash. 468, 269 Pac. 844.

The majority opinion, in referring to the portion of the statute relative to the court's judgment, says:

"A careful analysis of this section convinces us that the only determination the court is authorized to make at the time of the commitment is whether or not the person brought before it is insane, and that this is purely a judicial function; that at such time the court

is also authorized to determine and make findings in regard to the ability of the person, his estate, or relatives, to pay for the maintenance of such patient. It is true the court necessarily does, in arriving at his conclusion as to whether or not the person is insane, pass upon the findings made by the doctors, but we think this is only for the purpose of determining the question of insanity, and we find nothing in the statute which would authorize the court, at the time of the commitment or thereafter, to make a determination as to whether or not the patient was violently insane, for the purpose of determining the liability of either the state or the county, nor does the court in fact make any finding which would affect such right."

However, by the definite terms of the statute, either the court or jury is given the exclusive jurisdiction to ascertain, first, "the existence of the insanity of the person accused" and, second, if the court or jury find the accused insane, whether the insanity is

". . . of a recent or curable nature, or of a homicidal, suicidal or incendiary character, or that from the violence of the symptoms the said insane person would be dangerous to his or her own life, or to the lives and property of others if at large, . . ."

While Rem. Rev. Stat., § 6930, does not use the words "violently" and "not violently" insane in connection with the powers and duties of the courts as it does in connection with the powers and duties of the superintendent of the hospital, the language used in respect to the powers and duties of the courts with reference to determining the degree and class of insanity is, in substance, precisely the same.

The case of *State v. Pierce County*, 132 Wash. 155, 231 Pac. 801, 46 A. L. R. 594, cited and relied upon by the majority, can have little weight here, for the reason that the statute in force at that time, namely, Laws of 1923, chapter 145, p. 466, was dissimilar in several important particulars, and provided for findings and

judgment by the court as to the insanity and degree thereof, as is required by our present law, and then stated:

"If the court finds that the insane person or his estate or relatives have not the financial ability to pay said sum and that such insane person is violently insane and dangerous to life and property and that such insane person should be committed to a hospital for the insane, the charges and costs above referred to shall be borne by the state of Washington. If the court finds that the insane person or his estate or relatives have not the financial ability to pay said charges and costs and that such insane person should be committed to a hospital for the insane, but is not violently insane and dangerous to life and property, the charges and costs above referred to shall be paid by the county from which the commitment is made." Rem. Comp. Stat., § 6930.

It was in construing that act that the court made the statement set out in the opinion of the majority, and while it was held in the *Pierce County* case that the fourteenth amendment of the United States constitution had not been violated, the court stated:

"The second answer is that the county really has its day in court, through the representation of it at the hearing by an officer of the state, who becomes an officer of the county, in that the county is but a state agency. The county's interests are protected by the judge who conducts the commitment proceedings. This has been held to be true in other instances and should be equally so here. *State ex rel. Fowler v. Moore,* 46 Nev. 65, 207 Pac. 75; *Baugh v. Baugh,* 37 Mich. 59; *Rehfuss v. Rehfuss,* 169 Cal. 86, 145 Pac. 1020; *Powell v. Powell,* 80 Ala. 595, 1 South. 549; and *People ex rel. Healy v. Case,* 241 Ill. 279, 89 N. E. 638."

In other words, the court found that the fact relative to liability had been determined by the court at the time the commitment was made. A comparison of the 1923 statute with the one under consideration shows they are entirely different. Under the earlier law, the

court decided the liability of the state and the county in a judicial proceeding, while the present statute provides that the superintendent of the hospital may decide the liability of the state and county without a hearing and contrary to judgment of the court.

Counsel for the state contends that the county may defend when it is sued, as in the instant case. However, the county would not have any available defense, because the matter to be considered would be the class and degree of insanity at the time the patients were treated at the hospital. Under the terms of the statute, the county is not accorded any hearing when the superintendent makes his determination of the class and degree of insanity.

The majority also rely upon *State v. Mulcare,* 189 Wash. 625, 66 P. (2d) 360. The statute involved in that case, Rem. Rev. Stat. (Sup.), § 10249-1 [P. C. § 4503-31] *et seq.* (Laws of 1935, chapter 114, p. 308), does not in any way limit the verdict of the jury or the judgment of the court in a criminal case. That statute allows the court and jury to determine the guilt or innocence of the person accused of crime and the grade of the offense, and does not vest these same functions in the board of prison, terms, and paroles so as to permit the board to nullify a judgment rendered by a court of competent jurisdiction.

The question of guilt is separate and apart from the question of punishment. If Rem. Rev. Stat. (Sup.), § 10249-1 *et seq.,* provided that the parole board could determine, after the conviction of a crime, that the convicted person was guilty of a lesser degree of the offense charged than had been found by the jury, then the statute would be parallel to the one we have under consideration.

In its answer, the respondent has pleaded the defense of *res judicata,* in that, in each and every instance,

the patients afterwards committed to the hospital were, by judgment of a court of competent jurisdiction, adjudged and decreed to have dispositions to injure others and were dangerous to be at large.

The state and county were parties to the various actions in the superior court at the time the accused persons were tried. The state was represented by the prosecuting attorney, and the actions were brought in the name of the state. The various judgments entered were binding upon the state and county. In each of the cases, there was a concurrence of the four conditions of *res judicata,* namely: First, identity of the subject matter of the suit; second, identity of the cause of action; third, identity of persons and of parties to the action; and, fourth, identity of the quality in the persons for or against whom the claim was made.

In the case of *Currier v. Perry,* 181 Wash. 565, 44 P. (2d) 184, this court stated:

"On the main question in this case, there is no uncertainty about the rule in this state. As early as *Sayward v. Thayer,* 9 Wash. 22, 36 Pac. 966, 38 Pac. 137, it was stated:

" 'The general doctrine is that the plea of *res judicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.'

"That rule has been steadfastly adhered to and followed in this state. Some of our cases so holding are, as follows: *Achey v. Creech,* 21 Wash. 319, 58 Pac. 208; *Spokane Valley Land & Water Co. v. Jones & Co.,* 53 Wash. 37, 101 Pac. 515; *Loeper v. Loeper,* 81 Wash. 454, 142 Pac. 1138; *Woodland v. First National Bank,* 124 Wash. 360, 214 Pac. 630; *Sprague v. Adams,* 139 Wash. 510, 247 Pac. 960, 47 A. L. R. 529; *Munro v. Irwin,* 163 Wash. 452, 1 P. (2d) 329; *Cascade Lumber Co. v. Hargis,*

167 Wash. 409, 9 P. (2d) 366; *Globe Construction Co. v. Yost,* 173 Wash. 528, 23 P. (2d) 895. In the last case, it was taken for granted that the rule is so well understood in this state that it was referred to in the terse, yet comprehensive, language, as follows:

" 'The matter in controversy here was included within the matter in controversy there. It either was, or else could have been, adjudicated in the former action. That judgment, therefore, became *res judicata* of the issues and matters here presented.' "

This rule has been followed in *Large v. Shively,* 194 Wash. 608, 79 P. (2d) 317, 82 P. (2d) 793; and *Briggs v. Madison,* 195 Wash. 612, 82 P. (2d) 113.

The present action instituted by the state is, in fact, a collateral attack upon each of the judgments rendered by the superior court in which the persons brought before it were adjudged insane.

In its reply, the state alleges: "That the court was without jurisdiction to adjudge the said insane persons to be violently insane or otherwise." A collateral attack upon a judgment is an attempt to avoid, defeat, or evade, or deny its force and effect in some incidental proceeding not provided by law for the express purpose of attacking it. A collateral attack denies any validity whatever to the former adjudication. 2 Words & Phrases (3d Ser.), 133.

A judgment cannot be assailed collaterally unless it is void. A judgment imports verity, is presumed to be valid until set aside on appeal, and cannot be impeached by evidence *de hors* the record. *Merz v. Mehner,* 57 Wash. 324, 106 Pac. 1118; *Levinson v. Vanderveer,* 169 Wash. 254, 13 P. (2d) 448; *Globe Const. Co. v. Yost,* 169 Wash. 319, 13 P. (2d) 433.

The superior court is a court of general jurisdiction, and in the first instance had jurisdiction of the persons accused of being insane. Constitution of the state of Washington, Art. IV, § 6; Rem. Rev. Stat., § 6930.

Rem. Rev. Stat., § 404 [P. C. § 8078], states: "A judgment is the final determination of the rights of the parties in the action."

When a court of competent jurisdiction enters a judgment, such judgment is final and conclusive against any attack except by appeal, and it becomes absolutely final if no appeal is taken as provided by statute. It may not be changed or modified, regardless of whether it is right or wrong. *State ex rel. Griffith v. Superior Court,* 71 Wash. 386, 128 Pac. 644; *State ex rel. McGlothern v. Superior Court,* 112 Wash. 501, 192 Pac. 937; *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P. (2d) 397; *Davidson v. National Can Co.,* 150 Wash. 370, 273 Pac. 185; *Roethler v. St. Martins Mineral Springs Hotel Co.,* 154 Wash. 349, 282 Pac. 207; *Hibbard & Co. v. Morton,* 184 Wash. 569, 52 P. (2d) 313; *Sitko v. Rowe,* 195 Wash. 81, 79 P. (2d) 688; 8 Bancroft, Code Practice & Remedies (1928), 8574, § 6501.

The provisions of the statute relating to the determination of the degree of violence of the insane persons are irreconcilable, in that the act first compels the court to make the finding concerning the extent of the patient's insanity, and then provides that the superintendent of the hospital shall decide the same question forthwith upon his commitment to the state hospital. The word "forthwith" is defined in Webster's New International Dictionary (2d ed.) as follows: "Immediately; without delay; hence, within a reasonable time; promptly and with reasonable dispatch." The result would be to have the court make a judgment, and then allow the superintendent to overrule that judgment immediately after it was entered.

The court, in all of the cases mentioned, proceeded in accordance with the statute. Witnesses were called, who were sworn and testified, and from the evidence

adduced, the court entered a judgment which, in the absence of appeal, became final and conclusive as to everyone, including the state. The legislature in such cases has no power to authorize an administrative officer or any other person to change, alter, or modify the judgments committing the persons charged to the hospital for the insane.

The powers of the departments of government are not entirely independent of each other. In *State ex rel. Washington Toll Bridge Authority v. Yelle,* 195 Wash. 636, 82 P. (2d) 120, the court stated:

"The complete separation of governmental powers into the legislative, the executive, and the judicial is impossible. In order to cope effectively with many complex relations created by modern society, it is necessary to vest in administrative officers or bodies powers partaking of any two or all of these functions. The legislature manifestly cannot delegate the power to make purely substantive law, but may delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action dependent, provided it has enunciated a standard by which such an administrative body must be guided. *State ex rel. Chicago, Milwaukee & St. Paul R. Co. v. Public Service Commission,* 94 Wash. 274, 162 Pac. 523; *State v. Bayles,* 121 Wash. 215, 209 Pac. 20; *Royer v. Public Utility District No. 1,* 186 Wash. 142, 56 P. (2d) 1302."

Legislative enactments, encompassing rightful subjects of legislation and falling within the province of the constitutional powers of the legislature, will not be revised by the courts. We are not concerned with the policy of a law as such. *State v. Seattle Taxicab & Transfer Co.,* 90 Wash. 416, 156 Pac. 837; *Shorts v. Seattle,* 95 Wash. 531, 164 Pac. 239; *State v. Nelson,* 146 Wash. 17, 261 Pac. 796; *In re Peterson's Estate,* 182 Wash. 29, 45 P. (2d) 45; *McDermott v. State,* 197 Wash. 79, 84 P. (2d) 372.

Notwithstanding the foregoing well settled principles, the legislature may not invade the province of the judiciary and set at naught a judgment of a court of competent jurisdiction by the enactment of a statute subsequent to the entry of the judgment. Any statute or part thereof attempting such an exercise of power is unconstitutional and void.

In the case of *State v. New York, N. H. & H. R. Co.,* 71 Conn. 43, 40 Atl. 925, the supreme court of errors of Connecticut said:

"The separation of the powers of government into three departments, each of which within its own sphere is supreme, is a constitutional principle which cannot be overturned. The judgment is the final and supreme act of judicial power. The legislature cannot overturn judgments, any more than the judiciary can make laws. A judgment is based upon established rules and principles administered by the judiciary.

"If the legislature can provide another tribunal to decide matters once decided by the judiciary, it could strip the judiciary of its functions, it could unsettle matters once determined, could substitute its will in place of settled principles of law, the growth of centuries, and it would in so doing destroy our system of government."

"The power to vacate or set aside judgments and decrees, must be exercised solely by the judiciary. The legislature cannot set aside a judgment, nor can it empower any court to set aside a judgment which had been rendered and had passed beyond the control of the court prior to the passage of the act; because in doing so the legislature is exercising judicial functions not accorded to it by the constitution." 1 Freeman on Judgments (5th ed.), 395, § 204.

"But the legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be its exercise in the most objectionable and offensive form,

since the legislature would in effect sit as a court of review to which parties might appeal when dissatisfied with the rulings of the courts.

"As the legislature cannot set aside the construction of the law already applied by the courts to actual cases, neither can it compel the courts for the future to adopt a particular construction of a law which the legislature permits to remain in force. 'To declare what the law *is, or has been* is a judicial power; to declare what the law *shall be,* is legislative.'" 1 Cooley's Constitutional Limitations (8th ed.), 190-191.

"The legislature cannot annul or set aside the final judgment of a court of competent jurisdiction, or take particular cases out of a settled course of judicial proceedings. . . . The result of any other rule would be seriously to interfere with the discretion and independence of the judiciary." 6 R. C. L. 162, § 163.

See, also, *In re Petition of Siblerud,* 148 Minn. 347, 182 N. W. 168; *People ex rel. Sprague v. Clark,* 300 Ill. 583, 133 N. E. 247; *In re Cannon,* 206 Wis. 374, 240 N. W. 441; *Langever v. Miller,* 124 Tex. 80, 76 S. W. (2d) 1025, 96 A. L. R. 836; *People ex rel. Lafferty v. Owen,* 286 Ill. 638, 122 N. E. 132, 3 A. L. R. 447; 12 C. J. 831, § 308; Annotation, 3 A. L. R. 450, *et seq.*

As already indicated, the case at bar presents a somewhat anomalous situation, in that the same statute which vests the courts with power to inquire into the mental condition of persons and to determine the degree of insanity, also prescribes that the superintendent of the state hospital for the insane shall do likewise immediately after the court has rendered judgment and before any material changes have taken place in the mental condition of the patient due to care or medical treatment. It is plain that, if the legislature cannot render a judgment a nullity by virtue of the enactment of legislation after the judgment is entered, it must also necessarily follow that it is impotent to do so through the medium of the delega-

tion of authority to an administrative officer authorizing him to act upon the same facts forthwith following the entry of a judgment by a judicial tribunal of competent jurisdiction.

Laws of 1925, Ex. Ses., chapter 133, pp. 334-337, Rem. Rev. Stat., § 6930, is null and void in so far as it gives the superintendent of the state hospital authority to determine whether a patient is violently or non-violently insane.

I am of the opinion that the judgment of the trial court should be affirmed.

MAIN, MILLARD, and BEALS, JJ., concur with SIMPSON, J.