SIMPSON, MAIN, MILLARD, and BEALS, JJ., dissent.
This action was instituted by the state of Washington to recover from Thurston county the sum of $34,096.18, together with interest, for the care and maintenance of insane patients committed from Thurston county to the western state hospital for the insane, from January 1, 1934, to September 30, 1937.
The complaint, in so far as material to the questions raised herein, alleges that all of the persons committed *Page 400 
to the western hospital during the period above mentioned have been adjudged by the superintendent of the hospital to be non-violently insane, and that each of said persons remained non-violently insane for the period hereinbefore mentioned. It is further alleged that none of the persons so committed, or his estate, or his relatives, have paid anything for the maintenance of such person while so confined, except as shown by the bill of particulars attached to the complaint.
The bill of particulars sets out the names of the persons committed for whom a charge of $4.50 a week was made, and also all payments made. After deducting all credits, the bill of particulars shows a balance due for such maintenance of $34,096.18, the amount claimed by the state herein.
The county, by its answer, denied generally its liability and alleged affirmatively that, in each instance where a patient was committed from Thurston county, a hearing was had in the superior court, upon a complaint filed therein; that witnesses were sworn, and in each instance at least two medical experts were sworn, and examined such patient, in the presence of the court and counsel for the state; that such medical experts swore to their findings and conclusions; and that at the conclusion of all the evidence, the court in each and every case found such person to be violently insane and dangerous to life and property.
It is further alleged that Rem. Rev. Stat., § 6930 [P.C. § 2827], in so far as it undertakes to authorize the superintendent of the hospital to set aside, revise, or in any manner alter or affect the judgment of the superior court theretofore made in each of such cases, is unconstitutional and void, as an attempt by the legislature to confer judicial powers on an administrative officer and as an attempt to confer upon such administrative *Page 401 
officer power to revise, set aside, and alter a judgment of the superior court.
The reply put in issue the affirmative matter set up in the answer.
The cause was submitted to the court upon an agreed statement of facts, and after a consideration thereof, the court entered judgment in favor of plaintiff in the sum of $6,482.92 and interest, this being the amount the court found due for patients in regard to whom the trial court did not make a finding that they were dangerous to be at large. The state has appealed.
Appellant contends the trial court erred in not allowing recovery for the remainder of the persons mentioned in the complaint and the agreed statement of facts, or, in other words, in refusing to allow recovery for all of those patients whom the superintendent, upon examination, had determined to be not violently insane and dangerous to be at large. Appellant also claims the court erred in deciding that the superintendent was without authority to make a finding as to whether or not the patient was violently insane and dangerous to life and property.
The following are the material facts contained in the agreed statement of facts: From January 1, 1934, to September 30, 1937, the appellant maintained, cared for, and treated, in the western state hospital, approximately one hundred persons committed to this institution from Thurston county, a definite statement of such care and maintenance being set forth in the bill of particulars, to which reference has been made, and which shows the sum of $34,096.18 as remaining unpaid for such care and maintenance. None of the persons, or his estate, or his relatives, have paid anything for the care of such person, except as credited in the statement, nor have any of such persons been found financially able to pay, except as shown in the statement. *Page 402 
All of the persons were committed to the western state hospital by the superior court of Thurston county, and each person so committed has been found by the superintendent of the hospital to be not violently insane and dangerous to life and property. The county commissioners of Thurston county have been notified of the result of such examination.
The superior court of Thurston county, in each case mentioned, made a commitment, and also made findings of fact with respect to the financial ability of the patient and his relatives to pay the costs and expenses, costs of transportation, and court costs. Upon the hearings, legally qualified physicians examined the persons so adjudged to be insane, as to the character of their insanity, for use in the physician's certificate attached to the official commitment by the court. The order of commitment was made upon a form provided by the state, a copy of such form being made a part of the statement. None of the cases is of imbecility, harmless chronic mental disorder, or mania a potu.
The form of the commitment used by the court in each case, in so far as material, was as follows:
"_______________________, the person named in the foregoing affidavit, being this day brought before me, for examination on a charge of insanity, and no jury having been demanded either by or on behalf of said person, and having heard the testimony of ___________________ witnesses who have been acquainted with the accused during the time of the alleged insanity; and Drs. _______________ and _________________, legally qualified and reputable physicians, after hearing the testimony of witnesses, and after a personal examination of the accused, having made the certificate by law required; and being myself satisfied that the said _____________ is insane, and being further satisfied of the truth of all the matters set forth in the certificates of said physicians, I do hereby order that the said ___________________ *Page 403 
be confined in the _______________________ Hospital for Insane."
In the form of commitment used in each case, the following questions were submitted to the examining physicians, and answered by them:
"(26) Are there suicidal, homicidal or incendiary tendencies?"
"(27) If suicidal, is the propensity now active and in what way?"
"(28) Is there a disposition to injure others? If so, is it from sudden passion or premeditation?"
"(61) With what form of insanity is the patient afflicted?"
"(67) Do you consider the patient dangerous to be at large?"
"(69) Briefly state the reasons why you consider this patient insane."
Respondent contends that Rem. Rev. Stat., § 6930, is unconstitutional and void, as in contravention of Art. IV, § 1, of the state constitution, which vests in the courts the judicial power of the state, in so far as this section attempts to delegate to the superintendent the authority to determine whether or not a patient, after his admission to the hospital, is violently insane and dangerous to life and property. It is further contended by respondent that the section is in violation of Art. I, § 3, of the constitution, in that the effect of such determination by the superintendent amounts to the taking of county property without due process of law.
Prior to 1925, Rem. Comp. Stat., § 6930, vested in the court the power to determine whether or not a patient was violently insane and dangerous to life and property, for the purpose of determining whether the state or the county should bear the expense of maintaining such patient. This section, in State v.Pierce County, 132 Wn. 155, 231 P. 801, 46 A.L.R. 594, was held to be constitutional and valid in all respects. In 1925, *Page 404 
the legislature amended § 6930, supra, and delegated to the superintendent the right to determine whether or not a patient, after his commitment, was violently insane and dangerous to life and property, such determination to be used as a basis for liability of either the state or county. Rem. Comp. Stat., § 6930, as amended, is now Rem. Rev. Stat., § 6930.
[1] In passing upon the constitutionality of a legislative enactment, several things must always be kept in mind. Courts will not sit to review or revise legislative action, but rather to enforce the legislative will when acting within its constitutional limits. A legislative act carries with it the presumption of its constitutionality, and will not be declared void unless its invalidity appears beyond a reasonable doubt. If the act is fairly and reasonably open to more than one construction, that construction will be adopted which will harmonize the statute with the constitution and avoid a conflict therewith. Smith v. Seattle, 25 Wn. 300, 65 P. 612;Litchman v. Shannon, 90 Wn. 186, 155 P. 783; Record Pub.Co. v. Monson, 123 Wn. 569, 213 P. 13; Robb v. Tacoma,175 Wn. 580, 28 P.2d 327, 91 A.L.R. 1010.
[2] For the purpose of this opinion, we shall divide § 6930,supra, into two parts; the first dealing with the manner in which one alleged to be insane is brought before the court and subsequent procedure by the court; the second part with certain acts which the statute authorizes the superintendent to perform after the patient reaches the hospital.
This section provides for the filing, before the superior court, of a complaint containing the charge of insanity, after which the court is required to summon witnesses, among whom must be two reputable physicians. The lay witnesses shall testify to conversations, manner, and general conduct of the alleged insane person, *Page 405 
and the doctors, after hearing the witnesses, and after making a personal examination of the alleged insane person, shall certify under oath that the person examined is insane, and that the case is of recent or curable character, or that the insane person is of homicidal, suicidal, or incendiary disposition, or that from any other violent symptom, the insane person would be dangerous to his or her own life, or the lives and property of the community. If the judge shall be satisfied that the factsrevealed in the examination establish the existence of theinsanity of the person accused, the insane person shall be ordered by the judge to be sent to a hospital for the insane, upon the following conditions: It is provided that, as a part of such proceedings, the court shall determine whether or not the person so committed, or his estate, or relatives, have the financial ability to pay the costs and expenses of the care and maintenance of such insane person while at the hospital. It is further provided that the court shall make findings of factrelative to the ability of such person, or his estate, orrelatives, to pay, and shall enter a judgment for the sum of $4.50 per week, costs of transportation and court costs, against the proper party or estate found responsible.
It will first be observed that nothing is said in this section, nor is any provision made, whereby the court, at the time of the commitment or at any other time, is authorized to make a finding or enter judgment that either the state or county is liable for the care and maintenance of such insane person. The only authority vested in the court relative to payment is to determine whether or not the person, his estate, or relatives, are financially responsible and able to pay such charges.
A careful analysis of this section convinces us that the only determination the court is authorized to make at the time of the commitment is whether or not the *Page 406 
person brought before it is insane, and that this is purely a judicial function; that at such time the court is also authorized to determine and make findings in regard to the ability of the person, his estate, or relatives, to pay for the maintenance of such patient. It is true the court necessarily does, in arriving at his conclusion as to whether or not the person is insane, pass upon the findings made by the doctors, but we think this is only for the purpose of determining the question of insanity, and we find nothing in the statute which would authorize the court, at the time of the commitment or thereafter, to make a determination as to whether or not the patient was violently insane, for the purpose of determining the liability of either the state or the county, nor does the court, in fact, make any finding which would affect such right.
[3] We shall now consider the second part of § 6930, which, so far as applicable to the questions raised herein, provides that, when such patient is received at the hospital, he shall be forthwith examined by the superintendent, who shall determine whether or not such insane person is violently insane and dangerous to life and property, and shall thereupon notify the county commissioners of the county from which such person was committed, of the result of such examination. If the court has found that the insane person, his estate, or relatives, did not have the ability to pay, and the superintendent shall determine that such insane person is violently insane and dangerous to life and property, the charges and costs referred to shall be borne by the state. If, however, the court has found that the insane person, his estate, or relatives, did not have the ability to pay the charges and costs, and the superintendent shall determine that such insane person is not violently insane and dangerous to life and property, such charges *Page 407 
and costs shall be paid by the county from which the commitment was made.
[4] We cannot agree with respondent that the superintendent, in making the determination authorized by the statute, is exercising a judicial function vested in the court, nor can we agree that by such action the superintendent is in any manner changing, modifying, or affecting the judgment of commitment. As we view the statute, it gives to the court the right to determine certain facts for the express purpose of determining whether or not the person is insane, and to determine whether or not the person or his relatives have the ability to pay, and the statute gives to the superintendent, after the commitment, the authority to determine certain facts for the express purpose of determining whether the state or county shall be liable. This, we believe the legislature had the right to do. It is our opinion that, after the person is committed, the care and maintenance of such person becomes an administrative problem, and that the legislature may delegate to an administrative officer the authority to determine who shall pay for such care and maintenance, as was done in the section under discussion.
[5] We think the case of State v. Pierce County, supra, is decisive of the question raised by respondent, that this section violates the fourteenth amendment of the United States constitution and Art. I, § 3, of the state constitution. This same question was raised in the Pierce County case, supra, and we quote the third reason given in that case for holding the contention of respondent untenable:
"The third answer is that, even though the county may be said to have had no opportunity to adjudicate the question of its liability in the commitment proceedings, yet it has not been deprived of its property without due process of law, since, in an action begun to recover the charge against the county, it has full opportunity *Page 408 
to raise all the issues and have a full adjudication of all questions it may seek to raise. This same point was raised inState v. Bateman, 110 Kan. 546, 204 P. 682, and GuthrieCounty v. Conrad, 133 Iowa 171, 110 N.W. 454, by relatives of the insane persons, who claimed that they had not had their day in court. But the courts there said that, in the suits brought to recover from them the amount of the charges, they had ample opportunity to present every objection, and that therefore their property was not being taken without due process of law."
While it is true that, in the Pierce County case, the court did not have before it the question of the delegation of power to an administrative officer to determine the liability of the state or county to pay, still we believe there is much in that case which supports the contention of appellant in the instant case.
We think the case of State v. Mulcare, 189 Wn. 625,66 P.2d 360, is applicable in principle to the instant case, and is decisive of the question as to whether or not the legislature may vest the superintendent of the hospital with authority to make the determination authorized by the statute. It was contended in the cited case that the statute which delegated to the board of prison, terms, and paroles the right to fix the term of imprisonment was unconstitutional. It was argued that the fixing of a term of imprisonment is a judicial power which cannot be conferred upon, or executed by, an administrative body, such as the parole board. In the cited case, we stated:
"It is the function of the judicial branch of the government to determine the guilt of persons charged with crimes and to impose the sentence provided by law for the crime of which a particular individual has been found guilty. But the execution of the sentence and the application of the various provisions for the mitigation of punishment and the reformation of the offender are administrative in character and are properly exercised *Page 409 
by an administrative body, according to the manner prescribed by the legislature."
So, in the instant case, we believe the matter of determining whether or not a person is insane is purely a judicial function, but the question of determining the class of insanity for which the state or county will render assistance, is an administrative function, and properly delegated to an administrative officer.
In the case of State ex rel. Boyle v. Ernst, 195 Wn. 214,78 P.2d 526, we recognized the right of the legislature to safeguard the expenditure of state funds, therein saying:
"With respect to the second contention — of necessity the legislature must delegate to executive and administrative officers the power to expend state funds. It may and does set up such safeguards and limitations as it may deem expedient — as in this instance, where it has prohibited expenditures except upon quarterly budgets approved by the director, and from allotments made by the governor. Should the court, in face of these statutory provisions, grant the writ sought, its decree would amount to nothing short of usurpation of legislative power and the assumption of executive and administrative functions."
See, also, Hanson v. Soderberg, 105 Wn. 255, 177 P. 827;Vail v. Seaborg, 120 Wn. 126, 207 P. 15.
We conclude, therefore, that the legislature had the right to vest in the superintendent the authority to determine whether or not a patient is violently insane and dangerous to be at large; that no constitutional right of respondent, for the particular purpose prescribed by the statute, has been violated; and that the trial court erred in refusing to give judgment in favor of appellant in those cases where the court had found the insane person, or his estate, or his relatives, unable to pay the costs and charges, and the superintendent of *Page 410 
the hospital had determined the patient was not violently insane and dangerous to life and property.
The cause is reversed and remanded, with instruction to the trial court to enter judgment for appellant in accordance with this opinion.
BLAKE, C.J., STEINERT, ROBINSON, and GERAGHTY, JJ., concur.