[No. 3933. Decided June 21, 1901.]

LYMAN C. SMITH, *Appellant,* v. CITY OF SEATTLE *et al.,*
                    *Respondents.*

MUNICIPAL CORPORATIONS — LAYING WATER MAINS — ASSESSMENT
   ACCORDING TO BENEFITS.
      Under the laws of this state, which authorize cities to make local improvements and pay therefor by assessment upon the property specially benefited, and under Laws 1899, p. 234, which recognizes the laying of a water main to be a local improvement in the same class as the grading of a street, the city of Seattle has power, under its charter passed in conformity to such general laws, to create a local assessment district for the purpose of laying a water main and charge the cost thereof against property owners according to benefits to their real property in such district.

SAME — LOCAL IMPROVEMENT BONDS — POWER TO ISSUE FOR LAYING
   WATER MAIN.
      Laws 1899, p. 234, which authorizes the issuance and sale of bonds by cities to pay for local improvements is applicable to the city of Seattle, by way of amendment to the powers conferred by the general incorporation law under which it had been incorporated; and under that act and the provision of the Seattle charter adopted pursuant thereto (Seattle charter, art. 8, § 11, subd. 1) which recognize water mains as in the nature of local improvements, the city of Seattle has power to provide for the payment of the expense of laying water mains by the issuance of local improvement bonds.

SAME — CONSTITUTIONAL LIMIT OF INDEBTEDNESS.
      The provision of the state constitution (art. 8, § 6) which authorizes cities to become indebted in excess of the limitation

upon general municipal indebtedness, for the purpose of supplying such cities with water, artificial light and sewers, cannot be construed as a prohibition upon the method of payment for water mains other than out of a general fund for that purpose nor as a limitation on the legislative power to vest corporate authorities with power to make local improvements by special assessment.

SAME — INAPPLICABLE TO LOCAL ASSESSMENT DISTRICTS.

The limitation in art. 8, § 6, of the constitution against cities incurring an indebtedness for water, artificial light, and sewers in excess of the five per cent. additional to the amount allowed for general municipal indebtedness has no application to indebtedness by local assessment districts in the laying of water mains, in which the cost is chargeable against the property benefited.

Appeal from Superior Court, King County.—Hon. BOYD J. TALLMAN, Judge. Affirmed.

*Clise & King* and *E. F. Blaine,* for appellant.

*W. E. Humphrey* and *Edward Von Tobel,* for respondents.

The opinion of the court was delivered by

WHITE, J.—The complaint in this action in substance alleges that the city of Seattle is a city of the first class; that the city has passed an ordinance providing for the laying of a water main, with the necessary gates, tees, crosses, fire hydrants and other appurtenances for a reasonable water service and fire protection, along a certain street in said city; that the plaintiff is the owner of a lot fronting on said street; that for the purpose of paying for said water main and its gates, etc., the city has created a local improvement district, and that the lot of the plaintiff is in said district; that the ordinance provides that the property abutting on the street along which the main is laid, especially benefited thereby, shall bear the costs of construction; that R. H. Thomson, Frank N. Little, and Luther B. Youngs constitute the board of public works

of said city; that said board of public works is about to
let a contract for the construction of said water main, etc.,
and by so doing will create a cloud upon the title of the
plaintiff, and will create an apparent lien upon said prem-
ises for the sums assessed against the same for said
water main, etc. The ordinance directing the laying of
the water main is referred to and made a part of the
complaint. It provides that assessments be levied and
collected upon all lots and parcels of land benefited by said
improvement, to defray the cost and expenses thereof, that
local improvement district bonds be issued, and that said
assessment shall become a first lien upon all property lia-
ble therefor for the payment of said bonds; that the mode
of payment shall be by the mode of "Payment by Bonds,"
as provided by an act of the legislature of the state of
Washington entitled "An act authorizing the issuance
and sale of bonds by cities to pay for local improvements,"
etc., approved March 14, 1899 (Laws 1899, p. 234).
The ordinance establishes a local improvement district
by metes and bounds, in which the plaintiff's lot is in-
cluded, and provides that the property within the dis-
trict, and none other, shall be deemed to be the property
specially benefited, and that the cost and expenses of the
improvement, including necessary incidental expenses,
shall be defrayed by the collection of a special assessment
upon the property in said district, except 18 per cent.
of the same, exclusive of fixed expenses thereon, which
shall be paid from the water fund of the city. The com-
plaint further alleges that in 1890 the city of Seattle
purchased its water plant and issued its general bonds
therefor; that in 1892 it issued its general bonds in the
sum of about $1,000,000, and that the money received
from said bonds was expended principally in laying water
mains along the streets of the city, and the interest there-

on is met and paid by a general tax on all the property within said city; that the city had also just finished what is known as the "Cedar River Water Extension," to the existing water works, at a cost of about $1,200,000, which has been paid for by warrants against the water fund of the city, and which the city binds itself to redeem in an amount not less than $100,000 per year out of its water fund, or from any source the city may desire, the city reserving the right to make such payments in such amounts as it may desire on January 1st and July 1st of each year after January 1, 1902. The complaint also alleges that the city charges for water supplied to its inhabitants certain fixed rates, and that these rates are in excess of the actual cost to said city of the water supplied; that the main provided for by the ordinance in question is for the purpose of delivering water to the people residing on the street on which the main is to be laid, and for which water the city will require payment in advance at fixed rates, in excess of its actual cost to the city. It is also alleged that the plaintiff appeared before the city council and objected to the proposed improvement before the same was ordered. The objections so made are set out in the complaint. An injunction is prayed for, to restrain the defendants from laying down the water main, under said ordinance, in front of the plaintiff's premises, at the cost and expense of the abutting property in said district. To the complaint a demurrer was interposed and sustained. The plaintiff elected to stand upon his complaint. The defendants accordingly had judgment. From the judgment this appeal is prosecuted.

The constitution provides that corporations for municipal purposes shall not be created by special laws, but that the legislature by general law shall provide for such

incorporation; that the charters of all cities shall be subject to and controlled by general law; that a city containing a population of 20,000 inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state.  Constitution, art. 11, § 10.  The city of Seattle has more than 20,000 inhabitants, and, under authority conferred in the constitution, has framed its own charter. By the power given under the provision of the constitution cited, the legislature has provided that cities of the first class shall be organized and governed according to the law providing for the government of cities having a population of 20,000 inhabitants.  Bal. Code, § 734. In the act providing for the government of cities having a population of 20,000 inhabitants, it is provided that such cities shall have power

"To provide for making local improvements, and to levy and collect special assessments on property benefited thereby, and for paying for the same or any portion thereof; . . . To determine what work shall be done or improvements made at the expense, in whole or in part, of the owners of the adjoining, contiguous, or proximate property, or others specially benefited thereby, and to provide for the manner of making and collecting assessments therefor; to provide for erecting, purchasing or otherwise acquiring water works, within or without the corporate limits of said city, to supply said city and its inhabitants with water, or to authorize the construction of same by others when deemed for the best interests of such city and its inhabitants, and to regulate and control the use and price of the water so supplied;"

and shall have power

"To provide for laying and collecting taxes on real and personal property for its corporate uses and purposes, and to provide for the payment of the debts and expenses of the corporation; . . . To borrow money for corporate purposes on the credit of the corporation, and to issue negotiable bonds therefor, on such conditions and in

such manner as shall be prescribed in its charter; but no city shall, in any manner or for any purpose, become indebted to an amount in the aggregate to exceed ten per centum of the value of the taxable property therein, to be ascertained by the last assessment for city purposes previous to the incurring of such indebtedness." Bal. Code, § 739.

Many other powers are given by § 739, *supra*, but for the purposes of this case it is unnecessary to enumerate them. It is also provided in the same act that a city adopting a charter under its provisions should have all the powers which are now or may hereafter be conferred upon incorporated towns and cities by the laws of this state, and all such powers as are usually exercised by municipal corporations of like character and degree, whether the same shall be specifically enumerated or not in the act; and that the rule that statutes in derogation of the common law should be strictly construed should have no application, but that the same should be liberally construed for the purpose of carrying out the object for which it was intended. Bal. Code, §§ 741, 742. This act was passed to carry out the mandatory provision of the constitution that the legislature should by general laws provide for the incorporation of cities, and that cities and towns should be subject to and controlled by such general laws. To this act and general laws we must look for the powers of such corporation, and the powers so given must control unless they clearly contravene some other constitutional provision.

The constitution, in addition to the powers conferred by § 10, art. 11, *supra*, provides that

"The legislature may vest the corporate authorities of cities, towns and villages with the power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all

municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same." Constitution, art. 7, § 9.

It will be observed that equality of taxation under this section applies only to general taxation for corporate purposes. The part of the section relating to local improvements permits taxation according to local benefits. The city charter of the city of Seattle provides that:

"Whenever the public interest or convenience may require, the city council is hereby authorized and empowered to order the whole or any part of the streets, lanes, alleys, squares or places of the city to be graded or regraded to the official grade, planked or replanked, paved or repaved, macadamized or remacadamized, graveled or regraveled, piled or repiled, capped or recapped, and to order sidewalks, sewers, manholes, culverts, bulkheads, retaining walls, *water mains,* curbing and cross walks to be constructed or repaired therein; and to order any and all work to be done which shall be necessary to complete the whole or any portion of the said streets, lanes, alleys, squares or places; and the city council may levy and collect an assessment upon all lots or parcels of land specially benefited by *such improvements* to defray the whole or any portion of the cost and expense thereof, which assessment shall become a first lien upon all property liable therefor, prior and superior to all other liens and encumbrances." Charter, City of Seattle, art. 8, § 11, subd. 1.

This provision of the charter was adopted in March, 1900. The legislature in 1899 passed an act authorizing the issuance of bonds by cities to pay for local improvements. The first section of that act reads as follows:

"Whenever any city shall have power and authority vested in it by its charter or by any law of this state to order or cause the whole or any part of the streets, lanes, alleys, squares or public places of such city to be graded, re-graded, planked, re-planked, graveled, re-graveled,

piled, re-piled, paved, re-paved, macadamized, re-maca-
damized, capped, re-capped, or to order or cause side-
walks, sewers, man-holes, culverts, curbing, gutters, water
mains, or crosswalks to be constructed or to order or cause
to be made any local improvement whatever, and to levy
and collect assessments upon the property benefited thereby
or abutting, adjoining, contiguous or approximate there-
to, to defray the whole or any portion of the cost and ex-
pense of any such improvement, the proper authorities
of such city may, in their discretion, provide for the pay-
ment of the cost and expense of such improvement by
bonds of the district, which shall include the property
liable to assessment for the payment of the cost and ex-
pense of such improvement according to the charter of
such city, issued to the contractor, or by the proceeds of
such bonds to be issued and sold as hereinafter provided."
Laws 1899, p. 234.

Section 4 of this act provides that in all cases where
any city shall issue bonds as provided in the act, to pay
the cost and expense of any local improvement, the said
cost and expense shall be assessed against the lots and
parcels of land, which under the provision of law, and the
charter of such city, shall be liable therefor. This act
must be regarded as an amendment to the general in-
corporation laws theretofore enacted by the legislature
under § 10, art. 11, of the constitution. The city of Se-
attle has declared the laying of a water main to be a local
improvement, the same as the grading of a street. The
legislature has recognized and declared it to be a local
improvement in the same class as the grading of a street.
To the legislature, by the constitution, was confided the
duty, by general laws, of defining and limiting the powers
of municipal corporations. By the express provision
of § 10, art. 11, of the constitution, all city charters
framed or adopted by authority of the constitution shall
"be subject to and controlled by general laws." Every
act of the legislature is presumed to be valid and consti-

tutional until the contrary is shown. All doubts are resolved in favor of the validity of the act. If it is fairly and reasonably open to more than one construction, that construction will be adopted which will reconcile the statute with the constitution and avoid the consequences of unconstitutionality.

"Legislators, as well as judges, are bound to obey and support the constitution, and it is to be understood that they have weighed the constitutional validity of every act they pass. Hence the presumption is always in favor of the constitutionality of a statute; every reasonable doubt must be resolved in favor of the statute, not against it; and the courts will not adjudge it invalid unless its violation of the constitution is, in their judgment, clear, complete, and unmistakable." Black, Interpretation of Laws, p. 93, and cases cited.

A statute can be declared unconstitutional only where specific restrictions upon the power of the legislature can be pointed out, and the case shown to come within them, and not upon any general theory that the statute is unjust or oppressive or impolitic, or that it conflicts with a spirit supposed to pervade the constitution, but not expressed in words. *Sawyer v. Dooley,* 21 Nev. 390 (32 Pac. 437); *Wadsworth v. Union Pacific Ry. Co.,* 18 Colo. 600 (33 Pac. 515, 36 Am. St. Rep. 280, 23 L. R. A. 812).

There is nothing in our constitution imposing specific restrictions upon the power of the legislature to incorporate cities and give to such the municipal powers we have heretofore pointed out, including the power to maintain water works, although the city may regulate and collect pay for the water used, and including the power to create local districts for the construction of water mains. It has been held in this country generally that water works for the supplying of cities and towns with water are undoubtedly for public and municipal purposes, and that

the legislature may confer authority upon municipalities to erect and operate such works, or to purchase works already established, and to that end they may incur expenditures, levy taxes, issue bonds and exercise the right of eminent domain. 29 Am. & Eng. Enc. Law, p. 2, and cases cited.

Cooley on Taxation, in speaking of water pipes in streets, says:

"Of these it has been said that 'the benefits are local, as the use of the water must necessarily be mostly restricted to the benefit of the property on the lines, both for domestic purposes and the extinguishment of fires. The effect of supplying the streets with water is to enhance the value of the dwelling-houses thereon. The maintenance of the pipes and the supplying of water are necessarily a continuing expense,' and for these reasons the assessment of the cost upon adjacent property is within the general principle of local assessments." Cooley, Taxation (2d ed.), 620; *Allentown v. Henry,* 73 Pa. St. 404; *Northern Liberties v. St. John's Church,* 13 Pa. St. 104; *Allen v. Drew,* 44 Vt. 174; *Hughes v. Momence,* 163 Ill. 535 (45 N. E. 300).

REDFIELD, J., in *Allen v. Drew, supra,* explains the principle of such assessment, and says:

"It is not easy to see any distinction between an assessment for building a sewer or sidewalk, and an aqueduct. They are each, in degree, a general benefit to the public, and a special benefit to the local property, both in the uses and in the enhanced value of the property. The proprietor may, indeed, leave his house tenantless, and his vacant lots unvisited, but the assessment is not, for that reason, void. Such assessments are justified on the ground that the subject of the tax receives an *equivalent.*"

"The only essential elements of a 'local improvement' are those which the term implies, viz., that it shall benefit the property on which the cost is assessed in a manner local in its nature, and not enjoyed by property generally in the city. If it does this,—rendering the property more

attractive and comfortable, and hence more valuable for use,—then it is an improvement. . . . This construction is fully warranted by the definition of the word 'improvement' given by lexicographers. It has been defined as 'that by which the value of anything is increased, its excellency enhanced, or the like;' or 'an amelioration of the condition of property affected by the expenditure of labor or money, for the purpose of rendering it useful for other purposes than those for which it was originally used, or more useful for the same purposes.'" *State v. Reis,* 38 Minn. 371 (38 N. W. 97).

The legislature has authorized the payment by cities for water mains by local assessments, the issuance of bonds, etc. (Laws 1899, p. 234.) The city of Seattle falls within the class of cities mentioned in the act. The legislature has power under the constitution to authorize local improvements, and discretion, which ordinarily courts cannot review, to decide on what is a local improvement. When this discretion is exercised, courts should not interfere unless it plainly and clearly appears that the improvement is not such as can be recognized as being local in its nature. *State v. Maginnis,* 26 La. An. 558; *State v. Clinton,* 26 La. An. 561; Cooley, Taxation, 609.

The constitution, when limiting general county, city, town, school district, and other municipal indebtedness to one and one-half per centum of the taxable property, provides that any city or town, with the assent of three-fifths of the voters therein, may be allowed to become indebted to a larger amount, but not exceeding five per centum additional, for supplying such city or town with water, artificial light, and sewers, when the works for supplying such water, light, and sewers shall be owned and controlled by the municipality. Constitution, § 6, art. 8. This court has held that the indebtedness here provided for is in excess of that provided for general municipal purposes, and is for the special purpose of supplying water, light,

and sewers. *Austin v. Seattle*, 2 Wash. 667 (27 Pac. 557).
It is urged by the appellant that, inasmuch as the city
is authorized to incur this special indebtedness for the
three defined purposes, therefore it is the intention of
the constitution to prohibit any other method for the
payment of water mains than out of a general fund pro-
vided for that purpose. It will be observed that there is
no obligation on the part of the city to use any part of the
money borrowed for water. The city may use the entire
sum for lights or sewers, or for either one of these pur-
poses, just as the municipal authorities, in their discre-
tion, may determine. To hold, so far as the construction
of water mains is concerned, that this provision of the
constitution is a limitation on the legislative power to
vest corporate authorities of cities with power to make
local improvements by special assessment or by special
taxation of property benefited, or to frame general laws
of incorporation providing for such powers, or of the right
of the legislature to control and regulate the subject by
general laws, is to read something into the constitution not
contemplated by the framers thereof. Such a construction
would do violence to the well established rule heretofore
cited,—that a statute can be declared unconstitutional only
when specific restrictions upon the power of the legislature
can be pointed out. The mere fact that money borrowed
by the city under this clause of the constitution, or from
its general municipal fund, has been used to purchase
water works and extend water mains in aid of the general
system, in no wise militates against the right to extend
other mains by means of the local improvement system.
Constitutions are to be construed liberally and on broad
general lines. "Narrow and technical reasoning," says
Judge Cooley, "is misplaced when it is brought to bear
upon an instrument framed by the people themselves, for

themselves, and designed as a chart upon which every man, learned and unlearned, may be able to trace the leading principles of government." Cooley, Constitutional Limitations (6th ed.), 73.

When the constitution was framed it was well known that there were cities growing rapidly in population, that there was an inadequate supply of water, and that in most instances the supply would have to be conducted in aqueducts for a long distance before reaching the city; and under such circumstances it is reasonable to presume that the excess indebtedness authorized was *to aid* in the procurement and distribution of such water supply. Because a large sum of the money borrowed has been used in this particular case in extending water mains in the city is no reason for holding that local district assessment cannot be resorted to in supplying districts of the city which are at present without water, or where there is an inadequate supply. It would be just as reasonable to hold that, because a city had improved some of its streets from the general fund, therefore it could not create an assessment district for a particular street. We know that in supplying cities with water it is necessary to lay upon some of the streets large mains, from which lateral mains conduct the water to outlying parts of the city. It would certainly be unjust to tax all the cost of such large mains to the property abutting on the street where they happen to be laid. In the wisdom of the city authorities, it might be judged prudent to lay such mains and pay for the same out of the general fund. One drawing from this main through a lateral main receives a benefit for which he is not taxed in the local improvement. One having property on the main conduit, it is true, may escape local taxation. The same may be said of one having property on a street improved out of the general fund. These are matters that

must be left to the wisdom of the municipal government. The brain and ingenuity of man have never yet been able to devise a scheme by which the burden of taxation is made to fall uniformly and equally upon all. Says Judge Cooley:

"There is no imperative requirement that taxation shall be equal. If there were, the operations of government must come to a stop, from the absolute impossibility of fulfilling it. The most casual attention to the nature and operation of taxes will put this beyond question. No single tax can be apportioned so as to be exactly just, and any combination of taxes is likely in individual cases to increase instead of diminish the inequality." Cooley, Taxation (2d ed.), 164.

The contention of the appellant that because the constitution has limited the indebtedness of cities for supplying the same with water, artificial light, and sewers to five per cent. additional to the amount allowed for general indebtedness, local assessment districts cannot be created for constructing water mains, is not sound. The constitution limits the general indebtedness of cities, yet in the case of *Baker v. Seattle,* 2 Wash. 576 (27 Pac. 462), this court held that the indebtedness of local assessment districts for street improvements was not to be considered when computing the limit of municipal indebtedness. For the same reason the debts of local assessment districts for laying water mains should not be considered as having any bearing on the limit of the indebtedness of cities for water, artificial light, and sewers.

But it is urged by the appellant that, because the city may charge for the water furnished to its inhabitants, and make a profit on the same, the city is like an independent corporation furnishing the city with water, and, as it is clear that such corporation would not have the power assumed by the city in creating local districts, therefore

the city has not such power.  The answer to this, is that
under the laws of the state the legislature has seen fit
to confer such power on the city, and there is no specific
or even implied restriction imposed by the constitution
against the exercise of such legislative power and discre-
tion.  *Allentown v. Henry,* 73 Pa. St. 404.

It may be that the city is not authorized to charge for
water so as to make a profit.  The mere fact that in reality
it charges so as to make a profit in no way determines the
question of its power, which is all that is involved in this
case, to create a local assessment district for the purpose
of laying water mains.  The argument of the appellant
is based on the assumption that the city has *a legal right*
to make a profit by the sale of water, the same as a private
water company.  In view of the legislation clearly author-
izing the creation of local assessment districts for laying
water mains, if the right to make a profit on the water
sold, and the right to create the district cannot stand
together, it would be our duty, for reasons heretofore given,
to hold that the making of a profit by the sale of water was
the unconstitutional act, and not the creation of the local
improvement district.  But the question whether or not
the city can charge water consumers more than the amount
necessary to pay for the costs and expenses of improving
and maintaining the water system and the additional cost
of bringing the water to the city for distribution is not
properly before us in this action.  The allegation of the
complaint, in substance, is that the city of Seattle charges
for the water supplied by it certain fixed rates, which are
in excess of the actual cost to the city, and that the city
requires payment in advance.  The question suggested
can be raised only by one who is charged such excessive
rates, or who is refused water unless he pays such excessive
rates.  There is no allegation in this complaint that the

plaintiff is charged such excessive rates, or that he has been refused water unless he pay such excessive rates.

We hold that the city of Seattle, under its charter, the laws, and the constitution of this state, may create a local assessment district for the purpose of laying a water main; that it may charge the cost and expenses of the same according to benefits to the real property in such district benefited thereby, and that the act of the legislature authorizing the issuance and sale of bonds by cities to pay for local improvements (Session Laws 1899, p. 234), applies to the city of Seattle.

The judgment of the court below is therefore affirmed.

REAVIS, C. J., and FULLERTON, ANDERS, MOUNT, DUN-BAR and HADLEY, JJ., concur.