IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34077-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WENDELL LEE MUSE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Wendell Muse challenges his conviction for possession of methamphetamine on the grounds of an unlawful search, seizure, and arrest. We reject his contentions and affirm his conviction.

FACTS

On August 24, 2015, during the dusk of 8:08 p.m., Pasco Police Detective Chad Pettijohn and Officer John D'Aquila spoke with one another along Clark Street in a busy downtown area with significant foot traffic. Detective Pettijohn had recently investigated several homicides with hand guns in Pasco's downtown. Pettijohn had responded to calls

in the downtown area after someone walking, riding a bike, or driving a car had shot someone on the street.

Police officers Chad Pettijohn and John D'Aqulia saw Wendell Muse bicycling in the middle of Clark Street. When Muse turned south onto 5th Street, Detective Pettijohn entered his patrol car and activated his lights to stop Muse for a bicycle infraction.

Wendell Muse was slow to stop. Based on Detective Chad Pettijohn's experience, Muse's apprehension to stop concerned Pettijohn that Muse might flee. Detective Pettijohn instructed Muse to keep his hands on the bike's handlebars. Muse disobeyed Pettijohn's direction. Muse removed his right hand from the handle bar and reached into his pocket. Muse's short pockets bulged, and Pettijohn saw Muse clasp small items in his hands. Pettijohn again charged Muse to place his hands on the handlebars. As Pettijohn approached Muse from behind, Muse moved his right hand. Muse's body screened Pettijohn's view of the location where Muse moved his hand, but Pettijohn surmised Muse reached toward his waistband and worried that Muse accessed a weapon. Pettijohn repeated his request a third time to no avail.

Officer John D'Aquila heard Pettijohn repeatedly ordering Muse to keep his hands on the bicycle. D'Aqulia saw Muse remove his hands from the bike's handlebars and reach his hand toward his waistband.

Pasco Detective Chad Pettijohn grabbed Wendell Muse. Muse tensed and tugged from Detective Pettijohn. Muse's reaction increased Pettijohn's concern that Muse might harm Pettijohn or someone else. Officer John D'Aquila shared the concern.

Detective Chad Pettijohn secured Wendell Muse's hands behind his back and frisked his outer clothing for a weapon. Pettijohn did not feel any weapon, but touched a methamphetamine pipe in the pocket of Muse's shorts. Detective Pettijohn later testified that "[t]he instant I felt it, I knew exactly what it was because I've been a police officer over ten years. There was no question what it was." Report of Proceedings (RP) (Oct. 20, 2015) at 9.

Pasco Detective Chad Pettijohn arrested Wendell Muse for unlawful possession of drug paraphernalia. Incident to the arrest, Detective Pettijohn searched Muse's shorts and backpack. In addition to seizing the pipe, Pettijohn found three baggies of methamphetamine and a small digital scale to weigh items in grams or ounces. Burn marks on the bowl of the pipe captured white residue, which Pettijohn recognized as methamphetamine.

## PROCEDURE

The State of Washington charged Wendell Muse with unlawful possession of a controlled substance, methamphetamine. Pursuant to CrR 3.6, Muse moved to suppress evidence of the drug that Detective Chad Pettijohn confiscated from a frisk of Muse's

3

person. Muse argued that Pettijohn lacked cause to detain him and to frisk him. The trial

court denied Muse's motion.

A jury trial proceeded. During Detective Chad Pettijohn's direct examination, the

State asked Detective Pettijohn whether Wendell Muse uttered statements to him

regarding the items found on Muse's person. The trial court noticed that the case jacket

lacked any notation of the holding of a CrR 3.5 hearing. The court conducted a side bar

to inquire whether defense counsel filed a CrR 3.5 motion to suppress any statements

made by Muse to Pettijohn. The State responded that Muse and defense counsel

stipulated to the admission of Muse's statements to Pettijohn. Defense counsel informed

the court that Muse now wished to withdraw his stipulation. The trial court verified with

defense counsel that he received the necessary authority from Muse to stipulate that any

statements Muse made to Pettijohn were made freely and voluntarily after being advised

of his *Miranda* rights. Defense counsel answered in the affirmative. The court ruled that

Pettijohn could testify regarding what Muse told him. Over the objection of Muse,

Pettijohn testified that Muse told him:

> [T]hat the meth pipe—in reference to the meth pipe, he knew it
> was there and he on occasion smoked methamphetamine and had done
> so a week prior. He also told me he had no knowledge that the package
> was in his wallet or that the two packages were inside his backpack.

RP (Dec. 16, 2015) at 17.

4

The jury found Wendell Muse guilty of unlawful possession of methamphetamine. The trial court sentenced Muse to time served and twelve months of community custody.

LAW AND ANALYSIS

Frisk of Muse

On appeal, Wendell Muse contends that Detective Chad Pettijohn unlawfully frisked him because Pettijohn lacked a reasonable basis to conclude that he might be armed and dangerous. Accordingly, Muse argues that the methamphetamine removed from his clothing must be suppressed as fruit of the poisonous tree. Muse does not argue that, once Detective Pettijohn felt an object other than a weapon, Pettijohn could not confiscate the pipe, drugs, and scale. The State validates the frisk because specific and articulable facts justified Pettijohn's fear that Muse possessed weapons. We agree with the State.

We review a trial court's denial of a CrR 3.6 suppression motion to determine whether substantial evidence supports the trial court's challenged findings of fact and, if so, whether the findings support the trial court's conclusions of law. *State v. Cole*, 122 Wn. App. 319, 322-23, 93 P.3d 209 (2004). This court reviews de novo whether a protective frisk was justified under the circumstances. *State v. Ibrahim*, 164 Wn. App. 503, 508, 269 P.3d 292 (2011).

As a general rule, warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment and article I, section 7 of the Washington State

Constitution. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). Washington affords five jealously and carefully drawn exceptions to the warrant requirement, which include exigent circumstances, searches incident to a valid arrest, inventory searches, plain view searches, and *Terry* investigative stops. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009); *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). This case involves a *Terry* investigative stop.

A *Terry* stop is authorized if police have a reasonable suspicion of criminal activity. *State v. Ibrahim*, 164 Wn. App. at 508 (2011). But a frisk for weapons requires something more. *State v. Ibrahim*, 164 Wn. App. at 508. The officer must reasonably believe his safety or that of others is endangered. *State v. Garvin*, 166 Wn.2d at 250 (2009). For a permissible *Terry* frisk, the State must show that (1) the initial stop is legitimate, (2) a reasonable safety concern exists to justify the protective frisk for weapons, and (3) the scope of the frisk is limited to the protective purposes. *State v. Duncan*, 146 Wn.2d at 172 (2002). In this context, courts shy from substituting their judgment for that of police officers in the field. *State v. Collins*, 121 Wn.2d 168, 173, 847 P.2d 919 (1993); *State v. Belieu*, 112 Wn.2d 587, 601-02, 773 P.2d 46 (1989). A founded suspicion and a basis from which the court can determine that the frisk was not arbitrary or harassing suffices. *State v. Collins*, 121 Wn.2d at 173. An officer's right to search is not retrospectively invalidated when the suspect's pocket contains contraband instead of a weapon. *State v. Harper*, 33 Wn. App. 507, 511, 655 P.2d 1199 (1982).

6

Wendell Muse's challenge to the seizure rests on the second prong of the *Terry* frisk test. Muse argues that Detective Chad Pettijohn lacked reasonable concern that he bore arms. Muse relies on *State v. Xiong*, 164 Wn.2d 506, 191 P.3d 1278 (2008). Muse correctly recites the rule followed in *Xiong*, but his application of his prosecution's facts to the rule miscarries. In *Xiong*, the court wrote:

> The scope of the frisk, however, must be limited to protective purposes. If an officer cannot point to specific articulable facts that create an 'objectively' reasonable belief that a suspect is armed and 'presently' dangerous, then no further intrusion is justified.

*State v. Xiong*, 164 Wn.2d at 514. The Supreme Court concluded that specific facts failed to support a reasonable belief that the defendant was armed and presently dangerous. Nothing in the record supported the police officers' fear for their safety. The defendant cooperated with police, made no effort to flee, and made no moves to suggest he might reach for his pants pocket.

In our appeal, Detective Chad Pettijohn stopped Wendell Muse for riding his bicycle down the middle of a busy, downtown street. Pettijohn then lacked cause to frisk Muse. Nevertheless, against Detective Pettijohn's repeated requests, Muse continued to remove his hand from the bike's handlebars and reach toward his waistband or pocket. Muse hid his movements by turning his body from Pettijohn. Pettijohn legitimately experienced fear that Muse might harm him or someone else. Officer D'Aquila suffered

7

a similar concern. Pettijohn limited the frisk to the outside of Muse's clothing, where he might find weapons.

### Wendell Muse's Statement to Detective Pettijohn

Wendell Muse next asserts that his statements to Detective Chad Pettijohn must be suppressed because they followed an unconstitutional search and seizure. Muse summarily attaches this assignment of error to his suppression argument on the basis that the *Terry* frisk was unlawful. Nowhere in his brief, does Muse identify which statements he believes should have been suppressed. Muse also does not address the stipulation made at trial or the failure to file a CrR 3.5 motion to suppress the statements. Anyway, we previously upheld the constitutional validity of the search.

### Muse's Arrest

For the first time on appeal, Wendell Muse challenges the constitutional propriety of his arrest. He maintains that Detective Chad Pettijohn arrested him without the requisite probable cause because possession of drug paraphernalia is not a crime. He contends he preserved this assignment of error by his trial court motion to suppress the fruits of the search of his person. In the alternative, he argues this issue may be raised for the first time on review as a manifest error affecting a constitutional right under RAP 2.5(a). The State disagrees with both alternate contentions.

We need not resolve whether Wendell Muse may challenge his arrest on appeal, because we may dispose of the contention easily on the merits. Contrary to Muse's

8

No. 34077-5-III
*State v. Muse*

claims, unlawful possession of drug paraphernalia is a crime under the City of Pasco's municipal code. Pasco Municipal Code (PMC) 9.38.030(1) declares it to be unlawful:

> To use, or to possess with the intent to use, drug paraphernalia or to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise induce into the human body a controlled substance, the possession of which controlled substance is in violation of RCW 69.50.

Muse does not resist the application of PMC 9.38.030.

### Ineffective Assistance of Counsel

Wendell Muse contends that, if this court concludes that his challenge to his arrest was not preserved and cannot be raised as manifest constitutional error, he was denied effective assistance of counsel. We reject this argument since PMC 9.38.030 permitted an arrest for possession of drug paraphernalia. Therefore, counsel's performance either was not deficient or Muse suffered no prejudice.

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); *State v. Hamilton*, 179 Wn. App. 870, 879, 320 P.3d 142 (2014). If one prong of the test fails, we need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). This is a mixed question of law and fact, reviewed de novo. *Strickland v. Washington*,

9

466 U.S. at 698.

For the deficiency prong, this court gives great deference to trial counsel's performance and begins the analysis with a strong presumption that counsel was effective. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015). Trial strategy and tactics cannot form the basis of a finding of deficient performance. *State v. Johnston*, 143 Wn. App. 1, 16, 177 P.3d 1127 (2007). Deficient performance is performance that fell below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The appellant bears the burden to prove ineffective assistance of counsel. *State v. McFarland*, 127 Wn.2d at 335. We cannot fault trial counsel for failing to seek to quash an arrest when the law validated the arrest.

Under *Strickland*, for the prejudice prong, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. at 669. Because the trial court would likely have sustained the arrest, Wendell Muse establishes no prejudice.

## CONCLUSION

We affirm Wendell Muse's conviction for possession of a controlled substance, methamphetamine.

10

No. 34077-5-III
*State v. Muse*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, J.

11